UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOWGENE FUIDICS, INC., <br> *Plaintiff*, | § <br> § <br> § | |
| v. | § <br> § | CIVIL ACTION H-11-2414 |
| ALFA LAVAL DORTMUND GmbH, and, <br> ALFA LAVAL, INC., <br> *Defendants*. | § <br> § <br> § <br> § | |

## ORDER

Pending before the court is plaintiff Bowgene Fluidics, Inc.'s motion for a preliminary injunction. Dkt. 53. Upon consideration of the motion, the response, the reply, the record, the evidence introduced at a hearing on the merits, and the applicable law, the motion is DENIED.

## BACKGROUND

Plaintiff Bowgene Fluidics, Inc. ("Bowgene") is a manufacturer and distributor of sanitary fluid handling valves. Bowgene was founded by Gary Fischer ("Fischer"), an individual with extensive experience in the sanitary valve industry. Sanitary valves are used primarily in the manufacture of pharmaceutical products. At some point in 2007 GS Anderson GmbH ("Anderson") became interested in using Bowgene to fill its distribution and marketing needs for certain Anderson valve products. On April 1, 2009 Bowgene entered into a five-year agreement ("Agreement") with Anderson wherein Bowgene would be involved in the manufacturing, distribution, marketing, and sale of certain Anderson products in North America. On February 10, 2010 Anderson was acquired by defendant Alfa Laval Dortmund GMBH ("Dortmund").

As a result of the acquisition, and Bowgene's past dealings with Dortmund, Bowgene became concerned about Dortmund's willingness to fulfill its contractual obligations under the Agreement. Bowgene became especially concerned when it learned that Dortmund intended to roll out its "New

Generation" sanitary valves in the Fall of 2012 in the United States through Dortmund's own distribution channels rather than through Bowgene. Bowgene describes the New Generation valves as "category killers" that will render all other sanitary valves in the same market obsolete. Based on this concern, Bowgene filed suit claiming, *inter alia*, breach of contract and seeking to enjoin Dortmund from marketing the New Generation products in North America without involving Bowgene.

On July 12, 2012, the court held a hearing on the motion for preliminary injunction, allowing both parties the opportunity to be heard and to adduce evidence.

## LEGAL STANDARD

"To be entitled to a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252–53 (5th Cir. 2009) (internal quotation omitted). "[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Id.* (internal quotation omitted).

## ANALYSIS

Because the court finds that Bowgene has failed to carry its heavy burden of likelihood of success on the merits, the court focuses its analysis on that point. Bowgene argues that the Agreement grants it an exclusive license to distribute, or at the very least receive a commission, on any and all Dortmund sanitary valves sold in North America. Since the issue before the court is the exclusivity of the Agreement, for the purposes of this order the court assumes without deciding that

2

the Agreement is valid and enforceable. Texas law governs the interpretation of the Agreement. PX1, at ¶16.[1] Therefore, the court uses Texas law's rules of contract construction.

Texas courts enforce unambiguous contracts as written. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Id.* "Not every difference in the interpretation of a contract amounts to an ambiguity." *Lopez-Franco v. Hernandez*, 351 S.W.3d 387, 394 (Tex.App.–El Paso 2011, no pet.). Mere disagreement over the meaning of a provision in the contract does not make the terms ambiguous. *Id.* Likewise, uncertainty or lack of clarity in the language chosen by the parties is insufficient to render a contract ambiguous. *Id.* "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

The court finds that the Agreement is unambiguous with respect to whether it is an exclusive distributorship. First, nowhere in the Agreement are the terms "sole," "exclusive," or any other term denoting exclusivity used regarding the parties' relationship. Paragraph 2 of the Agreement, granting the distributorship, contains no exclusivity terms. PX1, at ¶ 2. The first "Whereas" clause in the Agreement specifically contemplates that Dortmund will distribute to others when it states that it "is willing to include Bowgene, by way of either direct involvement or by way of commission, as mutually determined and agreed upon, in any and for all of [Dortmund's] sales of such products, within North America." *Id.* Regardless of whether that language gives Bowgene a commission on all of Dortmund's sales—and the court does not here comment on whether it does—the Agreement

---

[1] Unless otherwise noted, the court refers to the exhibits from the preliminary injunction hearing.

3

does not give Bowgene the right to prevent Dortmund from making the very sales that the Agreement discusses.

Bowgene argues that the mutual non-compete clause in the contract makes the contract exclusive. At first blush this argument makes sense. If Bowgene cannot compete with Dortmund and Dortmund cannot compete with Bowgene, then effectively they must deal with each other exclusively. However, closer examination of the language of the Agreement leads to a different conclusion. Paragraph 6 of the Agreement states that for the term of the Agreement and for 3 years following, Bowgene may not compete with Dortmund's products or products similar to Dortmund's products. PX1, at ¶ 6. For the same period, Dortmund may not compete with products or products similar to Bowgene's products. But, the evidence demonstrates that Bowgene and Dortmund do not manufacture the same products. If Dortmund intended to sell the specialty valves that Bowgene manufactures, then the non-compete would operate against it—assuming for the sake of argument that the contract is valid. And if Bowgene were to sell the valves that Dortmund manufactures, then the non-compete would again swing into play. What the non-compete does not do is affirmatively force Dortmund to sell its own valves through Bowgene. Accordingly, Bowgene cannot convert the non-compete clause into an exclusive distributorship. Therefore, the court finds that the Agreement unambiguously grants Bowgene a non-exclusive distributorship. Thus Bowgene may not enjoin Dortmund from proceeding with its New Generation rollout through other distributors. Bowgene's motion for preliminary injunction is DENIED.

It is so ORDERED.

Signed at Houston, Texas on July 13, 2012.

_____
Gray H. Miller
United States District Judge

4